## William F. White *vs.* Asaph E. Buss.

Where the plaintiff and defendant were in a house of public entertainment, gaming and playing at cards for money with each other and with other persons, with the consent and permission of the proprietor or occupant of the house, who, with the knowledge of the parties, suffered and allowed such gaming and playing therein for his own gain and reward, and the plaintiff, whilst the parties were so engaged in gaming, lent the defendant a sum of money, for the purpose of enabling him to engage and continue therein; it was held, that the loan was an illegal contract, and that the money lent could not be recovered back, whether the occupant or keeper of the house was or was not licensed as an innkeeper or common victualler.

THE plaintiff brought this action of assumpsit, to recover the sum of $240, alleged to have been loaned by him to the defendant.

On the trial, which was before *Merrick*, J., in the court of common pleas, the plaintiff produced a witness, who testified to the acknowledgment by the defendant, that he had borrowed and received of the plaintiff the sum of money sued for. The testimony of this witness, on the cross examination, was, that the money was loaned by the plaintiff to the defendant, while they, with other persons, were gaming and playing at cards for money in a certain house of public entertainment in the city of Boston.

In addition to instructions, which were not objected to, the presiding judge instructed the jury: " That the plaintiff could not maintain an action for the recovery of the money in

question, if the same was loaned by the plaintiff to the defendant, to be used for the purpose of gaming, at the time and place where they both were gaming and playing at cards for money with each other, and with other persons in such house of public entertainment, and for the purpose of enabling the defendant to engage and continue in such gaming and playing at cards for money therein, with the consent and permission of the proprietor and occupant thereof, who, then and there, to the knowledge of both plaintiff and defendant, suffered and allowed the same in his house, for his own gain and reward ; whether such proprietor and occupant was or was not licensed to be an innholder or common victualler."

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*M. S. Chase*, for the plaintiff.

*J. C. Park*, for the defendant.

SHAW, C. J. This action is brought to recover a sum of money alleged by the plaintiff to be lent by him to the defendant. The same evidence, by which the loan was proved, tended to show, that the money was loaned, whilst the plaintiff and defendant, with other persons, were gaming and playing at cards for money, in a certain house of public entertainment in Boston.

The judge instructed the jury, that the plaintiff could not recover, if the money was loaned to be used for the purpose of gaming, and was loaned at the time and place when and where both were gaming, and playing at cards with each other, and with other persons, in said house of entertainment, &c., with the consent and permission of the proprietor and occupant thereof, who, with this knowledge, suffered and allowed the same, in his house, for his own gain and reward, whether he was or was not licensed as an innholder or common victualler. Under this instruction, the jury found a verdict for the defendant.

The court are of opinion, that this instruction was right. We take it to be now well settled by the authorities, that any promise, contract or undertaking, the performance of

38*

which would tend to promote, advance, or carry into effect an object or purpose which is unlawful, is in itself void, and will not maintain an action. The law, which prohibits the end, will not lend its aid in promoting the means designed to carry it into effect; and, in this respect, the law gives no countenance to the old distinction between *malum in se* and *malum prohibitum.* That which the law prohibits, either in terms, or by affixing a penalty to it, is unlawful; and it will not promote, in one form, that which it declares wrong in another. *Aubert* v. *Maze,* 2 Bos. & Pul. 371. Money loaned to be employed in an illegal jobbing transaction cannot be recovered. *Cannan* v. *Bryce,* 3 Barn. & Ald. 179. Money lent to ransom a ship from the enemy in time of war, contrary to an express provision of statute, cannot be recovered. *Webb* v. *Brooke,* 3 Taunt. 6. Money lent for the purpose of gaming and playing at an illegal game, such as " hazard," cannot be recovered. *M'Kinnell* v. *Robinson,* 3 Mees. & Wels. 434.

The same principle has been repeatedly acted upon in this commonwealth. A note, given on an unlawful sale of shingles prohibited by statute, is not recoverable. *Wheeler* v. *Russell,* 17 Mass. 258. A note, payable in notes prohibited by statute from being issued by a bank, will not support an action. *Springfield Bank* v. *Merrick,* 14 Mass. 322. An agreement of partnership, one object of which was the contemplated illegal sale of lottery tickets, was held void. *Williams* v. *Woodman,* 8 Pick. 78. So a promise to pay money on a composition of felony, which is an illegal contract, will not support an action. *Worcester* v. *Eaton,* 11 Mass. 368. The law will not lend its aid to carry into effect an illegal contract, if it be executory, nor to restore the party who has paid money on it, if executed. *Ball* v. *Gilbert,* 12 Met. 397. And the court are of opinion, that gaming for money, under the circumstances stated in the charge, is unlawful, and therefore that money lent for the purpose of promoting it, is lent for an unlawful purpose, and cannot be recovered by the lender.

The statute of 1785, *c.* 58, is introduced by a preamble, declaring the practice of gaming for money or other property to be not only injurious in a high degree to the individuals concerned therein, but also in its tendency ruinous and destructive to the state, and then makes various provisions to restrain, prohibit and punish it. The judicial decisions under this act have regarded all gaming for money as illegal. *Mason* v. *Waite*, 17 Mass. 560. " According to the general policy and laws of this commonwealth," says chief justice Parker, " all gaming is unlawful." *Babcock* v. *Thompson*, 3 Pick. 446, 448.

The provisions of the statute of 1785 are substantially reënacted in the Rev. Sts. *c.* 50, $\S\S$ 12 and following. By $\S$ 12, winning money by playing at cards, dice or other game, is made penal, and the person losing may recover it back ; but if he does not sue within three months, a *qui tam* action will lie against the winner to recover it with treble damages ; and by statute 1837, *c.* 179, the same right to recover in a *qui tam* action is given against the owner, tenant or occupant of the house or building, &c., if gaming is there carried on with the knowledge or consent of such owner or occupant. By $\S$ 15, it is declared, that all notes, bills, bonds, mortgages, and other securities, given for money won, or for repaying any money knowingly lent for any gaming or betting, shall be void and of no effect, as between the parties to the same.

The distinction, made upon the terms of particular statutes,* avoiding securities but not making the contract itself void, cannot apply to a case like this ; in which the very reason why the contract is void is, that it is to give effect to a proceeding prohibited by law, as against public policy. The law surely will not imply a contract to pay money,

---

* *Robinson* v. *Bland*, 2 Burr. 1077. In this case, one of the judges, Mr. Justice Wilmot, puts his judgment on the distinction, that the money was not lent to play with, or for the purpose of play, but only at the time and place of play; at the same time, intimating that if it was lent for an unlawful purpose, the decision would be otherwise.

where an express contract to the same effect would be held void, because illegal.

Without citing other passages from the revised statutes, not only declaring gaming for money unlawful, but the keeping of a gaming house, gaming in a house of public entertainment, whether a licensed house or not, equally so, we think the tenor and effect of the statutes treat gaming, as characterized in the judge's charge, in this case, as unlawful ; and, therefore, our opinion is, that it is within the principle of the cases cited, that all contracts designed to promote, advance and uphold an unlawful purpose or practice, are utterly void.                *Exceptions overruled.*