JOSE TAVARES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58576.     Filed May 29, 1959.

*John J. Egan, Esq.*, for the petitioner.
*Raymond T. Mahon, Esq.*, for the respondent.

**OPINION.**

KERN, *Judge:* The sweepstakes ticket here involved was held by and registered in the name of petitioner's niece who was recognized as its owner by the operators of the sweepstakes and received the prize money paid on account thereof. Petitioner's right to receive any part of such prize money arose out of a collateral agreement between him and his niece which was void and unenforcible. See *Christian H. Droge*, 35 B.T.A. 829, and *Samuel L. Huntington*, 35 B.T.A. 835, and cases therein cited. See also *Babcock* v. *Thompson*, 20 Mass. (3 Pick.) 446, 448; *White* v. *Buss*, 57 Mass. (3 Cush.) 448; *Haller* v. *Workingmen's Co-op. Bank*, 263 Mass. 37, 160 N.E. 324; Mass. Ann. Laws, ch. 137, sec. 3. This agreement, though void and unenforcible,

was specifically complied with insofar as petitioner was concerned. There appears to be no question but that petitioner received from his niece one-half of the prize money called for by the collateral agreement.[2] Therefore, the niece would be taxable on only one-half of the prize money under the rule of the *Droge* and *Huntington* cases, *supra*.

The right, if any, of petitioner's wife to receive any part of the prize money must also be considered as arising out of the same collateral agreement with the petitioner's niece. Since this agreement was void and unenforcible, the taxable consequences of this "right" depend upon whether it was "specifically complied with." See *Samuel L. Huntington, supra* at 838.

Thus the crucial question upon which the petitioner has the burden of proof is whether the void and unenforcible collateral agreement was "specifically complied with" as to the wife by the payment to her of the part of the prize money to which she was purportedly entitled thereunder.

Upon this question the stipulation of facts is silent and we must depend on the testimony of petitioner, including the letter of August 22, 1952, which he identified. In order to demonstrate the unsatisfactory nature of this testimony, we quote it in full as follows:

(On Cross-Examination)

Q Mr. Tavares, the money that you people won: did you send the money to Anna?

A Yes.

Q When was that?

A I send money all the time.

Q You send money all the time to your wife?

A Yes.

Q I am talking about the money that Mary Jardine got from winning the sweepstakes ticket. She put that in her bank account. Right?

A Yes.

Q So you did not send that money to your wife, did you?

A I did send it down.

Q How did you get the money out of the bank?

A After Mary give me the half of it to me, I sent it to her.

Q You sent it to your wife, you say?

A Yes.

Q Mr. Tavares, I want to show you this letter here. Is this a letter you wrote to your wife? You wrote that letter to your wife?

A Yes.

Q It says, "Dear Anna, I will put in joint bank account $16,000." And this is dated August 22, 1952.

A Yes, after I was going home.

---

[2] Although the affidavit refers to the "ownership" of petitioner and his wife as 50 per cent "jointly," he would have been entitled, if the agreement had been valid, to the receipt of the entire 50 per cent. See *Theodore Milgroom*, 31 T.C. 1256, and cases cited therein.

Q This is August 22, 1952. This is more than 14 months after you won the money. Why did you wait so long to put the money in a joint bank account?

A I didn't have any intention to put it in a joint account.

Q You did not have any intention to put it in a joint bank account and then you put it in a joint bank account; is that right?

A Yes.

Q You didn't send the bank book to Anna, you kept the bank book?

A Yes.

\* \* \* \* \* \* \*

Q Mr. Tavares, this letter that you sent to your wife Anna on August 22, 1952, this doesn't tell her what bank the money is in, does it?

A No.

Q You had the bank book. Right?

A Yes.

(On Redirect Examination)

Q From whom did you receive this money that was to be put in the joint bank account?

A I don't remember.

Q Had you put this money in any bank account prior to that time, or was it in Mary's bank account?

A It was in Mary's bank account after that.

Q In other words, you received the money from Mary?

A Yes, sir.

Q And then placed it in these bank accounts?

A Yes.

Q And you placed it in there after receipt from her?

A Yes.

We recognize that petitioner spoke and understood the English language with some difficulty. However, even though we consider this testimony with appropriate sympathy, we are only able to conclude from it that petitioner gave his wife some money at undisclosed times in undisclosed amounts, having no mathematical relationship to the amount of prize money here involved, and made a deposit of $16,000 in an American bank to the credit of a joint account over which he retained the exclusive use and control.

Under the facts established by the record herein, we are unable to conclude that the unenforcible collateral agreement relating to the sweepstakes ticket was specifically complied with insofar as petitioner's wife was concerned. Therefore, no "right" of the wife under such agreement can be given any taxable consequences. Petitioner received one-half of the prize money. The fact, if it be a fact, that a void and unenforcible collateral agreement provided for a further division of petitioner's receipts cannot affect the taxability of petitioner's receipts to him in their full amount absent proof that there was full and specific compliance with this agreement by the payment over to the wife of all funds to which she might be entitled under the agreement.

*Decision will be entered for the respondent.*