## ALICE FINLEY, Respondent, v. WILLIE WILLIAM-SON, Appellant.

St. Louis Court of Appeals. Opinion Filed November 4, 1919.

1. **CONTRACTS: Illegal Contracts: Not Enforceable.** No court will lend its aid to one whose cause of action is founded upon an illegal and immoral act.

2. **PLEADING: Replevin: Answer: General Denial: Plea Regarded as New Matter Not Confession and Avoidance.** In an action in replevin seeking to recover possession of certain household goods, etc., by the vendor, a general denial followed by a plea of facts and circumstances attending the transaction whereby plaintiff transferred the physical possession of the property to defendant showing the immoral and illegal character thereof, as constituting a defense in that the facts so pleaded, if true, operate to deprive plaintiff of any standing in court to recover the possession of the property under a chattel mortgage or otherwise, such portion of the answer subsequent to the general denial is not to be regarded as a plea of confession and attempted avoidance but as new matter pleaded as defense under the provisions of section 1806, Revised Statutes 1909.

3. **REPLEVIN: Illegal Contracts: Bawdy House: Vendor Cannot Assert That No Title or Right of Possession Passed.** In an action in replevin seeking to recover possession of certain household goods, etc., by the vendor, where the contract of sale is one attended with immorality and illegality, plaintiff cannot take advantage of such immorality and illegality to assert that no title or right of possession passed to defendant, but that both title and right of possession remained in plaintiff; for to permit plaintiff so to do would allow her to take advantage of her own turpitude.

4. ———: ———: ———: **Illegality or Immorality of Transaction Bar to Replevin.** The action of replevin being purely a possessory action, in order to entitle plaintiff to recover, it must appear that she has a present right of possession which she can enforce without bringing to her aid the illegality and immorality of the transaction in question, or taking advantage of her own turpitude, for no court will lend its aid to plaintiff to enforce a supposed right of possession when that right can be established, if at all, only by permitting plaintiff to strike down her own contract on the ground of immorality and illegality in which she participated.

5. ——: ——: ——: **Illegality or Immorality of Contract a Defense in Replevin.** There is no rule or policy of the law forbidding the defendant to plead in defense in an action in replevin the illegality and immorality of the transaction.

6. ——: ——: ——: **Demand in Answer for Return of Property Not Seeking Affirmative Relief.** In an action in replevin where it obviously appears that it is the plaintiff and not the defendant who seeks affirmative relief in the action, it cannot be said that, by demanding in her answer the return of the property taken from her by the writ, defendant is seeking affirmative relief, such demand being made in compliance with section 2647, Revised Statutes 1909. The return of the property to defendant merely restores the original status, and the facts so pleaded, if taken as true, show that the taking of the property by plaintiff under the writ was, in effect, an abuse of the process of the court, since in truth plaintiff was without any standing in court to establish that she was lawfully entitled to the possession of the property.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. Kent K. Koerner,* Judge.

REVERSED AND REMANDED (*with directions*).

*Jno. B. Dempsey* and *Rozier G. Meigs* for appellant.

(1) The court erred in ruling that the plaintiff in replevin can recover upon a prior valid title to the property, provided that she can make her prima-facie case without reference to an intervening illegal transaction by which possession passed to the defendant, notwithstanding that defendant pleads and proves the illegality of the transaction. Notes to 9 Cyc. 557; Martin v. Hodge, 47 Ark. 578; Allenback v. Hunseker, 132 Pa. 349; Sawyer v. Sanderson, 113 Mo. App. 233; Standard Furniture Co. v. Van Alstine, 51 L. R. A., p. 889. (2) The court erred in setting aside the verdict of the jury and in sustaining plaintiff's motion for judgment *non obstante veredicto* and in rendering judgment therein for the plaintiff. Elliott on Contracts, sec. 745 1066 and 1067. (3) The plaintiff in replevin must recover if at all on the strength of his own title or right of possession, and not upon the weakness of that of his adversary. 34 Cyc. 1501; Stone v. McNealy, 59 Mo.

App. 396; Andrews v. Costican, 30 Mo. App. 29; Maryville National Bank v. Snyder, 85 Mo. App. 82. (4) Conducting the business of a bawdy· house is *malum in se.* And no contract involving the sale of such a business or in enforcing any contract right when the parties are *in pari delicto* can be enforced at law or in equity. Sprague v. Rooney 104 Mo. 358. (5) An immoral, illegal contract having been entered into and fully executed by parties who are *in pari delicto* cannot be enforced. It is the duty of the court when such facts appear to grant no relief to either party, but to at once, by appropriate orders and judgments, leave the guilty parties where it found them, and in replevin this can be effectuated only by return of the property to defendant. 35 Cyc. 1509, text and cases cited; Elliot, Contracts, secs. 745-1066; Parsons v. Randolph, 21 Mo. App. 353. (6) Party who is *in pari delicto* may set up· the illegality of the transaction and he will be heard, not for his sake, but because of the principles of public' policy which refuses the courts' aid to a party in search of relief. Standard Furniture Co. v. Van Alstine, supra; In re T. H. Bunch Co., 180 Fed. 519; Sawyer v. Sanderson, supra; Ulman v. Fair Assn., 167 Mo. 273; McDermott v. Sedgwick, 140 Mo. 172; Gwyn v. Williamson, 26 Mo 100. (7) Right to possession in replevin must be shown as at the commencement of the action. Prior possession is material only as it throws light upon the present right. 34 Cyc, 1470; Cobbey, Replevin, sec. 98; Morgner v. Briggs, 46 Mo. 65. (8) Replevin is strictly a proceeding at law; it cannot be invoked as an equitable proceeding for rescission or cancellation of a contract. Fredericks v. Tracey, 98 Cal. 658; Monarity v. Stofferan, 89 Ill. 528; Thompson v. Peck, 115 Ind. 512; Penton v. Henson, 13 Okla. 450; Marlott v. Warwick & Smith, 19 N. J. Eq. 439. (9) Sale of property by a vendor who not only knows the purpose to which they are to be put, and that that purpose is unlawful and where the vendor actively shares in carrying out the illegal purpose and receives

every dollar of the consideration from the illegal, immoral business deprives the vendor of every right to relief from his own wrong. Hodgson v. Temple, 5 Term. R. 181; Hannaurr v. Doane, 79 U. S. Sup. Ct. 342; Thomas v. City of Richmond, 79 U. S., 12 Wall. 349, 6 R. C. L. 696; St. L. Fair Assn. v. Carmody, 151 Mo. 566.

*Stern & Haberman* and *John M. Wood* for respondent.

(1) Plaintiff, having shown her right to the possession of the chattels without recourse to any illegal contract, and entirely independent of any such contract, was entitled to judgment for such possession. In re Bunch, 180 Fed. Rep. 524-5; Martin v. Hodge, 47 Ark. 378-384; Binks v. Harris, 91 Ark. 205, 208; National Bank v. Petrie, 189 U. S. 423; Miller v. Amman, 145 U. S. 421; Allebach v. Hunsacker, 132 Pa. 349; Allebach v. Godshalk, 116 Pa. 444; 9 Cyc, page 557; Roselle v. Beckerneice, 134 Mo. App. 380. (2) Defendant cannot, by resorting to proof of an illegal contract, defeat plaintiff's right to recover when plaintiff's right to recover is established by evidence unconnected with and entirely independent of any illegal contract or transaction. See authorities under Point 1. (3) Defendant, having admitted in her answer that plaintiff was the owner of the property on May 28, 1913, such ownership is presumed to continue and with it the right to its possession up to the time of the bringing of the suit. Swisler v. Storts, 30 Mo. App. 167; Nicholls v. Lead Company, 85 Mo. App. 586; In re Gehrigs' Estate, 27 N. E. 785 (N. Y.); Magee v. Scott, 63 Mass. 150; Sawles v. Carr, 38 Atl. 77. (4) Plaintiff was entitled to an instructed verdict at close of whole case. (5) The judgment of the court below, *non obstante veredicto,* was a judgment on the pleadings, and, therefore, proper, because the plaintiff was entitled to a judgment on the pleadings. Shearer v. Trust Co., 136 Mo. App. 229; Hurt v. Ford, 142 Mo. 283; Billows

v. Shannon, 2 Hill 68; Bradshaw v. Hedge, 10 Iowa, 402; Williams v. Anderson, 9 Minn. 39; Buckingham v. McCracken, 2 Ohio St. 287; Bradley v. Caswell, 65 Vt. 231; Friendly v. Lee, 20 Oregon, 202.

ALLEN, J.—At the last term of this court an opinion herein was handed down, reversing the judgment below and remanding the cause with directions to enter judgment for defendant on the verdict which the court had set aside. Thereafter, on respondent's motion, we granted a rehearing, and the case has since been reargued and resubmitted.

The action is one in replevin. The petition, filed May 22, 1914, is in the statutory form and alleges that plaintiff is the owner and lawfully entitled to the possession of certain personal property, to-wit, certain household goods, consisting of furniture, carpets, fixtures, utensils, etc., alleged to be situated in houses numbered 2633, 2635 Lucas Avenue in the City of St. Louis; the same has not been seized under any process, execution or attachment as property of plaintiff, but is wrongfully detained by defendant at the location mentioned, and that plaintiff will be in danger of losing said property unless it be taken out of the possession of the defendant or otherwise secured.

On the same day plaintiff filed her replevin bond, and the sheriff took possession of the property under the writ and delivered it to plaintiff, taking her receipt therefor.

Because of the nature of the case, as it reaches us on appeal, the answer, though lengthy, will be set out in full. It is as follows:

"Now at this day comes defendant Willie Williamson, and by leave of Court first had and obtained, files this, her answer to plaintiff's petition, and for such answer denies each and every allegation in plaintiff's petition, and further this defendant claims all of the property described in plaintiff's petition, the same having been taken from defendant by the Sheriff of the

City of St. Louis, Mo., on an order of delivery hereto-
fore made and entered in this cause, and defendant now
declares that said property is of the value of six thou-
sand ($6,000) dollars; that shhe has been damaged by
the taking and detention thereof in the sum of two
thousand ($2,000) dollars, and she demands the return
of said property to defendant, the said Willie William-
son.

"And for further answer to plaintiff's petition
defendant says, that for a long time prior to the 28th
day of May, 1913, and upon said last-mentioned date,
the plaintiff herein, Alice Finley, had been and was
then the owner of all the goods and chattels described
in the petition in this cause; that during all of said
time the said plaintiff was the proprietress of and was
conducting a bawdyhouse or brothel in the premises
numbered 2633 and 2635 Lucas avenue in the City of
St. Louis, and that all the goods and chattels afore-
said were used in and about and for the purpose of
enabling said plaintiff to conduct said bawdyhouse or
brothel; that this defendant was an inmate of said
bawdyhouse or brothel so conducted by the plaintiff
herein; that on the 28th day of May, 1913, the plaintiff
herein, well knowing the avocation of this defendant,
negotiated with her for the purchase of the goods and
chattels aforesaid, and for the sale by said plaintiff of
said goods and chattels, together with the so-called good
will and business theretofore conducted at said premises
by the said plaintiff; that in said negotiations and in
the contract of sale hereinafter pleaded, as well as in
the receipt of the various sums of money hereinafter
pleaded, the plaintiff herein well knew that the pur-
pose of said purchase by this defendant, and the use
to which all of said goods and chattels were to be put
by defendant was to continue to operate upon and
within the premises wherein said goods and chattels
were then placed a bawdyhouse or brothel, that is,
that plaintiff well knew that she was disposing of all of
said goods and chattels to defendant to be used in

maintaining a bawdyhouse or brothel, and that plaintiff well knew that the defendant expected to make all the deferred payments upon said purchase out of the profits realized from the conduct of said bawdyhouse or brothel, and that all of said goods and chattels were to be used to enable defendant to obtain the money with which to meet her payments upon said purchase through the conduct of a bawdyhouse or brothel.

"Defendant says further that on the 28th day of May, 1913, she paid to plaintiff the sum of one thousand ($1,000) dollars in cash as a part payment of the purchase price of the goods and chattels and of the alleged business then being conducted by the plaintiff in the premises 2633 and 2635 Lucas avenue and at the same time executed and delivered to plaintiff her one certain promissory note for two hundred ($200) dollars payable June 15, 1913, and twenty-six (26) promissory notes each for three hundred ($300) dollars, the first payable July 1, 1913, and one other payable on the 1st day of each succeeding month until all of the said twenty-six (26) notes were paid. The said cash payment, together with the notes above alleged, aggregating nine thousand ($9,000) dollars, which sum the plaintiff demanded and the defendant agreed to pay for the goods, chattels and so-called business then being owned and conducted by the plaintiff in the premises 2633 and 2635 Lucas avenue in said City of St. Louis, Mo.

"Defendant says that in consideration of the cash payment and of her promissory notes above set forth, the plaintiff made, executed and delivered to defendant, on the 28th day of May, 1913, an instrument which is in words and figures as follows:

'May 28, 1913.

'This is to acknowledge the receipt of one thousand dollars from Willie Williamson as part payment of the sum of nine thousand dollars for the sale of the business and furnishings in the premises 2633 and 2635 Lucas avenue in the City of St. Louis, Missouri. Bill of sale and chattel mortgage be prepared later, and also

notes for the remainder of the purchase price of $300, each payable monthly.

ALICE FINLEY.

"And thereafter, on, to-wit, May 29, 1913, to secure the deferred payments referred to in said instrument of writing above set forth, which consisted of twenty-six notes for $300 each and one note for $200, defendant executed a chattel mortgage with a power of sale covenant, by which defendant pledged all the goods and chattels described in plaintiff's petition to secure the payment of the balance of said sum of $9,000 then due and unpaid, which said sum of $9,000 was the price agreed to be paid to plaintiff for the furnishings and business of a bawdyhouse or brothel then being conducted at Nos. 2633 and 2635 Lucas avenue in the City of St. Louis Louis, Mo.

"Defendant says that from the 29th day of May, 1913, until on or about the 1st day of March, 1914, she conducted a bawdyhouse at the premises above described, used all the goods and chattels described in plaintiff's petition in and about the conduct of said bawdyhouse; that she paid the note for $200 also nine (9) of the notes for $300 each and $70 on account of the tenth (10th) note, making, with the $1,000 paid May 28, 1913, a total of thirty-nine hundred and seventy ($3970) dollars, and that the balance due on said notes is the sum of five thousand and thirty ($5,030) dollars; that all of said payments were made out of the profits arising from the conduct of said bawdyhouse, and were received by plaintiff with full knowledge that they were so obtained by the defendant.

"Defendant says that plaintiff is not entitled to recover or retain the possession of the goods and chattels described in the petition, for the reason that the contract of sale, and the mortgage given by defendant, gives her no right to judgment; that the consideration for the mortgage and notes given by this defendant to plaintiff were taken by said plaintiff with full knowledge that the same were given as part of the consider-

ation for the sale of a bawdyhouse or brothel with its furnishings, and that the said plaintiff well knew, not only, that defendant intended and purposed to conduct a bawdyhouse with the goods and chattels so sold to her, but also that defendant expected to pay said notes out of the proceeds of the avocation of conducting a bawdyhouse or brothel, and the plaintiff expected to receive payments of the several notes out of the earnings of defendant as the keeper of a bawdyhouse or brothel.

"Wherefore, the premises considered, defendant prays the court that it allow her claim for the goods and chattels described in plaintiff's petition, and for an order for the return of said goods and chattels to her possession, from which they were taken by plaintiff in this action, and that she may have judgment therefor against plaintiff, Alice Finley, and her surety, United States Fidelity and Guaranty Company, and for her costs in this behalf."

Plaintiff filed a reply consisting of a general denial of the new matter in the answer, but subsequently withdrew the reply, by leave of court, and filed a motion for judgment on the pleadings. This motion was overruled; and it appears that three subsequent motions of plaintiff to reconsider that ruling were likewise overruled. Thereafter the cause went to trial before the court and a jury.

To sustain the issues on her part plaintiff introduced but one witness, one Schnelle, a lawyer. On direct examination he testified that the chattels in question were in defendant's possession at the time of the institution of the suit, and had been in her possession for several months prior thereto; that he made several demands upon defendant for the same; and that before they passed into defendant's possession they were in the possession of plaintiff.

On cross examination this witness testified that prior to May 28, 1913, he was a "white slave officer" in the service of the Unites States Government, and that in that capacity he visited the premises above

mentioned about twice each month. He testified as to the sale of the property by plaintiff to defendant on May 28, 1913; that he saw a receipt given by plaintiff to defendant for money paid by the latter to the former upon that occasion; that he witnessed defendant's signature to the series of notes executed by her to plaintiff, and that the defendant acknowledged the execution of the chattel mortgage before him as a notary public. He stated that he knew that "possession was transferred" to the defendant and that she "was running the house," at 2633 and 2635 Lucas Avenue, in said city, subsequent to May 28, 1913. Further testimony of the witness is to the effect that after defendant defaulted upon the notes he made repeated demands upon her, threatened to foreclose the mortgage, and that he ultimately instituted the replevin suit, though it appears that he afterwards withdrew from the case.

The chattel mortgage was not introduced in evidence.

Defendant's evidence, consisting of her own testimony and certain exhibits, went to establish the facts alleged in her answer—except as to the precise amount paid by defendant upon the notes executed by her to plaintiff, mentioned in the answer. From defendant's evidence it appeared that on May 28, 1913, plaintiff, being then the owner of the goods in question, located in the building or buildings mentioned in the answer, where she was conducting a bawdyhouse, sold and transferred the said property to the defendant, together with the said "business" conducted by plaintiff, for the agreed price of $9000; that defendant paid plaintiff $1000 in cash and executed and delivered to plaintiff a series of notes aggregating $8000, together with a chattel mortgage upon the household goods, as security for the payment of the notes; that defendant was put in possession of the property, conducted the said place until on or about May 1, 1914, when it was closed by the municipal police authorities; that in the meantime defendant paid to plaintiff, upon the notes

mentioned, a further sum of $2770, making a total of $3770 paid to plaintiff on account of the said purchase price.

At the close of all the evidence in the case the trial court, after refusing all of the instructions offered by plaintiff, peremptorily directed a verdict for the defendant, directing the jury to state in their verdict the value of the property taken by plaintiff by means of the writ. In obedience to this instruction, the jury returned a verdict for the defendant, assessing the value of the property at $4225. Thereafter plaintiff filed a motion for a new trial, a motion in arrest of judgment and a motion for judgment *non obstante veredicto.* The motion for a new trial and that in arrest of judgment were overruled, but the court sustained plaintiff's motion for judgment notwithstanding the verdict, and entered judgment for plaintiff for the possession of the property described in the petition, with one cent damages for the detention thereof, and costs. From this judgment the defendant prosecutes the appeal now before us.

Defendant, appellant here, insists that the trial court erred in setting aside the verdict for defendant and entering judgment *non obstante veredicto.* In argument, defendant's counsel refers to the action as being, in fact, one to recover possession of the chattels described in the petition under the chattel mortgage, as for condition broken. It may be inferred that the action was instituted upon the theory that plaintiff could recover possession under the mortgage, but if so, it is clear that plaintiff abandoned that theory. Doubtless plaintiff's counsel realized that, in view of the nature of the transaction involving its execution, the chattel mortgage was unenforceable by plaintiff. And the sole contention of plaintiff is that, without regard to the chattel mortgage, plaintiff, upon the admissions of the answer, was entitled to judgment on the pleadings; and that the action of the court in ultimately sustaining the motion for judgment *non obtante veredicto* was proper.

It is conceded that in passing upon the propriety of the action of the court below in sustaining plaintiff's motion for judgment *non obstante veredicto,* we may look alone to the pleadings in the case. And in this connection see King v. Grocer Co., 188 Mo. App. 235, l. c. 239, 175 S. W. 77. This motion, in the instant case, proceeds upon the ground that the admissions of the answer are such as to show a right in the plaintiff to the possession of the chattels described in the petition.

It is further conceded by both parties that the transaction of May 28, 1913, between plaintiff and defendant, involving the sale of the business of conducting a bawdyhouse, was immoral and illegal. And it is well settled that no court will lend its aid to one whose cause of action is founded upon an illegal or immoral act. [See Sprague v. Rooney, 104 Mo. 349, l. c. 357, et seq., 16 S. W. 505; McDearmott v. Sedgwick, 140 Mo. 172, 39 S. W. 776.] In Sprague v. Rooney, supra, l. c. 357, 358, it is said:

"And at common law, a bawdyhouse is a common nuisance *per se.* [*Clementine v. State,* 14 Mo. 112.] And 'to conduct such a place, or to lease property for such a purpose, is a public wrong.' [*Givens v. Van Studdiford,* 86 Mo. 156.] In *Ashbrook v. Dale,* 27 Mo. App. 649, it was ruled that a contract to rent a house to be used as a brothel is illegal, and no recovery can be had on such contract, or on an implied contract, for such leasing.

"If there be one principle of the law well settled it is this: That a contract, expressed or implied, based on an illegal consideration, whether that consideration appear on the face of the contract or be proved *aliunde,* cannot be enforced either at law or in equity; that the moment the illegality of the contract is disclosed the gates of legal and equitable relief and remedy are at once shut against the party who seeks to enforce such a contract."

As to the transaction mentioned, these parties are in *pari delicto;* and the law will not lend its aid to either of them to enforce any claim or demand against the other arising therefrom, but will leave them where it finds them. Learned counsel for plaintiff concedes this, but asserts that plaintiff's right to judgment *non obstante,* or to a directed verdict, appears from the admissions of the answer without resort by her to the illegal or immoral transaction mentioned above.

But before further considering the main question involved, we shall notice briefly a point of pleading raised by plaintiff. It is said that the answer consists of a general denial followed by a plea of confession and attempted avoidance; and that under the rules of pleading, the general denial is overcome by such confession and attempted avoidance. [State ex inf. Hadley v. Delmar Jockey Club, 200 Mo. 34, l. c. 65, 66; 92 S. W. 185; 98 S. W. 539.] But we do not regard that portion of the answer subsequent to the general denial as a confession and attempted avoidance, but as new matter pleaded in defense under the provisions of section 1806, Revised Statutes 1909. By the general denial the defendant traverses the allegation of the petition that plaintiff is lawfully entitled to the possession of the property (a conclusion of law, but sufficient in replevin, under the statute), and then defendant pleads the facts and circumstances attending the transaction whereby plaintiff transferred the physical possession of the property to defendant, showing the immoral and illegal character thereof, as constituting a defense in that the facts so pleaded, if true, operate to deprive plaintiff of any standing in court to recover the possession of the property under the chattel mortgage or otherwise.

Coming then to the main question involved in the appeal, we are brought to the conclusion, after a careful scrutiny of the averments of the answer as a whole, that plaintiff was not entitled to judgment *non obstante veredicto.* It is true that the answer states that plaintiff was the owner of the property prior to May

28, 1913, the date of the transaction in question, but subsequent averments of the answer are that, on the date last mentioned, plaintiff transferred the property to defendant and put her in possession thereof by the so-called contract of sale and under the circumstances pleaded. It is true that this contract is one tainted with immorality and illegality, but plaintiff cannot take advantage of such immorality and illegality to assert that no title or right of possession passed to defendant, but that both title and right of possession remained in plaintiff; for to permit plaintiff so to do would allow her to take advantage of her own turpitude. *Nemo allegans suam turpitudinem est audiendus.*

As indicated, plaintiff's theory is that by the pleadings her right to relief, i. e., her right to the possession of the property, is made to appear "without recourse to, and independent of the immoral or illegal transaction." The general principle thus relied upon is well established. [See Roselle v. Beckemeir, 134 Mo. 380, l. c. 391, 35 S. W. 1132; Parsons v. Randolph, 21 Mo. App. 353.] Many other authorities might be cited, in this connection, from this and other jurisdictions, but it is unnecessary to encumber the opinion therewith. We do not think that, upon the pleadings, plaintiff's right to the possession of the property appears independent of the immoral and illegal transaction, or without allowing plaintiff to take advantage of her own turpitude involved therein. It is needless to say that replevin is purely a possessory action. And in order to entitle plaintiff to recover it must appear that she has a present right of possession which she can enforce without bringing to her aid the illegality and immorality of the transaction in question or taking advantage of her own turpitude. If plaintiff has a present right of possession it must be because of the fact that the contract, by which she parted with the physical possession of the property, is void, and that as a consequence thereof *the right of possession* continued at all times to remain in plaintiff. This is the very theory advanced and

19—Mo. App.

relied upon by plaintiff's learned counsel. But we regard it as entirely unsound when applied to a case of this character. The contract between the parties, whereby plaintiff transferred the actual possession of the property to defendant, being void for *immorality and illegality* no enforceable right of possession remained in plaintiff, for no court will lend its aid to plaintiff to enforce a supposed right of possession when that right can be established, if at all, only by permitting plaintiff to strike down her own contract on the ground of immorality and illegality in which she participated. And it is idle to speak of a right of possession remaining in plaintiff, when plaintiff is debarred from pursuing any remedy whereby to vindicate and enforce such right.

Plaintiff's counsel say that by the void transaction of May 28, 1913, plaintiff parted with nothing whatsoever. In this we think that counsel are in error. We think that defendant's counsel are correct when they say that by participating in such immoral and illegal transaction plaintiff "parted forever with her right to seek and obtain the aid of the courts of justice to aid her in securing the return of her property."

Plaintiff's counsel appear to place much reliance upon the opinion in United Shoe Machinery Co. v. Ramlose, 231 Mo. 508, 132 S. W. 1133, where the court, in referring to the contract there involved (l. c. 529) said:

"If the contract of lease in question is absolutely null and void, as contended for by counsel for respondent, then no right to the use of the twenty-six machines was conveyed or passed by virtue thereof from the appellant to the respondent. Under such circumstances the title remained in the former just as completely as if the lease had never been executed, and consequently respondent has no interest in them or to their use. This is selfevident, and was so held by this court in a number of cases."

But in that case neither fraud nor immorality was

involved. And later in the course of the opinion (l. c. 531, 532) the court said:

"Counsel for the respondent contend that notwithstanding the fact that the lease mentioned was void, and passed no right or interest in or to the machines to respondent, still appellant is not entitled to a recovery in this case, for the reason that since the lease was made in violation of sections 1024 and 1026, the courts will not aid appellant in its efforts to recover the machines, the possession of which was parted with, under and in pursuance to the terms of said void lease. For that reason it is insisted that the court leave the property where the parties themselves have placed it. In support of this contention counsel for respondent cite and rely upon the cases of Downing v. Ringer, 7 Mo. 585; Mason v. Pitt, 21 Mo. 392; Zinc and Lead Co. v. Zinc Mining Co., 221 Mo. 7.

"This contention, in our opinion, is unsound. That rule never applies except in those cases where the maintenance of the suit would necessarily result in the court's giving force and effect to the void contract, *or where the contract is tainted with fraud and immorality.*" (Italics ours.)

The exception noted in the paragraph just quoted is the very exception within which the case now before us falls. And other cases cited by plaintiff may in like manner be distinguished. The instant case is one involving immorality and turpitude of the basest sort, participated in by both parties to this controversy; and the law will not lend its aid to either in order to enable her to extricate herself from the position in which she has thereby placed herself. Defendant, prior to the institution of the suit, had the actual possession of the property, having come into such possession by virtue of the transaction mentioned. Plaintiff is precluded from obtaining a judgment for the possession thereof—not out of any regard for the rights of the defendant, but because of the rule of law that where in cases of this character the parties are equally culpable, the one in

possession has the better standing. (*In pari delicto melior est conditio possidentes.*) [See Roselle v. Farmers Bank, 141 Mo. 36, l. c. 43, 39 S. W. 274.] "That maxim of the law is not, strictly speaking, a mere defense to an action. It is a rule of public policy, founded on moral principle, and should be enforced by the courts whenever facts are developed justifying its application, whether the rule be pleaded or suggested by any party to the action, or not. The rule is established for the sake of the moral example it affords, not for the benefit of the wrongdoer in possession of illegal spoil." [Roselle v. Farmers Bank, supra, l. c. 43.]

And there is no rule or policy of the law forbidding a defendant, under such circumstances, to plead in defense the facts thus relied upon to defeat plaintiff's recovery. [See Parsons v. Randolph, supra.]

Plaintiff insists that it is the defendant and not the plaintiff who is seeking to take advantage of her own turpitude. This appears to be based upon the premise that the defendant is in the position of one seeking affirmative relief; for in their brief plaintiff's counsel say: "Will the court lend its aid to defendant who seeks to recover and retain property which she values at $6000 by pleading her own turpitude and immoral contract." This is a misconception of the *status* of the parties to the suit, which must be determined with reference to their situation at the time of the institution of the action, and unaffected by the fact that plaintiff, by the mere formality of suing out a writ of replevin with bond, summarily gained possession of the property prior to an adjudication as to her right of possession or her standing in court to enforce such supposed right. And obviously it is plaintiff and not defendant, who seeks affirmative relief in the action. It cannot be said that by demanding in her answer the return of the property taken from her by the writ, defendant is seeking affirmative relief. Such demand is made in compliance with section 2647, Revised Statutes 1909; and the return of the property to defendant merely restores the original

*status.* Upon the facts disclosed by the answer that *status* should be restored; for the facts so pleaded, if taken as true, show that the taking of the property by plaintiff under the writ was, in effect, an abuse of the process of the court, since in truth plaintiff was without any standing in court to establish that she was lawfully entitled to the possession of the property.

In conclusion it may be noted that the argument of plaintiff's learned counsel pushed to its logical conclusion, necessarily means that even if defendant had paid to plaintiff all of the purchase price of the property in controversy, nevertheless plaintiff, while retaining the fruits of her own iniquity, could treat the contract as void, as being immoral and illegal, and, invoking the aid of the courts, recover back the property with which she thus parted, upon the theory that the title and right of possession continued to remain in her. A doctrine so monstrous is not to be found in our law.

Our conclusion is that the trial court was right in directing a verdict for defendant in the first instance, and that the court erred in subsequently setting aside the verdict and entering judgment for plaintiff *non obstante veredicto.* The judgment is accordingly reversed and the cause remanded with directions to the circuit court to reinstate the verdict and enter judgment for defendant thereon. *Reynolds, P. J.,* and *Becker, J.,* concur.