CHRISTIAN H. DROGE, PETITIONER, *v.* COMMISIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79632. Promulgated April 2, 1937.

*Hugh Satterlee, Esq., William R. Green, Jr., Esq.,* and *I. Herman Sher, Esq.,* for the petitioner.

*I. Graff, Esq.,* for the respondent.

## OPINION.

MELLOTT: The facts set out in the findings will not be repeated. It may not be amiss, however, to set out herein a portion of the testimony relied upon as furnishing the basis for claiming that the amount paid to the wife constituted income to her rather than to petitioner.

Petitioner, called as a witness in his own behalf, testified that the understanding which he had with his wife was "that whatever we would get out of it [the investment in sweepstakes tickets] we would share it half in half. The arrangement was that we would go half and half on it, like we always have done in business and in other enterprises." Upon cross-examination he was asked if it was his understanding with his wife "that if any ticket won each would get one-half of the proceeds", to which he responded, "Yes, whatever would come out of the four, no matter which one it was, we would go half and half on it. That was the understanding."

The petitioner's wife expressed it in this wise: "We bought four tickets. So my husband paid for two and I paid for two. Even money, and we made this agreement: whoever wins it is on a fifty-fifty basis. If my husband wins, share with me, and if I win, I share with him. That was the understanding. * * * I thought my husband might have better luck than I. That is why we made that agreement."

Nothing in the manner or demeanor of the witnesses indicated that they were not telling the truth and there is no reason to disbelieve them. This leaves, then, only a question of law to be determined. The respondent has filed no brief. In the brief filed by petitioner it is claimed: (1) That the petitioner and his wife were joint owners of the winning ticket and of the proceeds derived therefrom; that hence petitioner is taxable only upon one-half of the proceeds; and (2) that even if it should be found that petitioner was the sole owner of the winning ticket, nevertheless he is taxable upon only one-half of the proceeds; for he specifically complied with his agreement to share the winnings with his wife. These contentions will be considered in the order stated.

Petitioner cited *Alfred Hafner*, 31 B. T. A. 338, as supporting his contention that under the law of the State of New York a married woman may deal separately with her property and may contract with her husband. The case so holds and, if applicable here, would be followed. But the question here is much broader. Recognizing that a husband and wife may contract with each other, there yet remains for consideration the question whether the facts show, or fail to show, that a legal and enforceable contract was in fact made.

It is fundamental that a partnership entered into for the purpose of engaging in gaming transactions or for the prosecution of an unlawful business is illegal. The courts of New York, where petitioner and his wife reside, have recognized and applied this rule of law. Thus in *Goodrich* v. *Houghton*, 134 N. Y. 115; 31 N. E. 516, the court denied relief to the plaintiff, who sought to recover from the defendant money which had been paid to him as the holder of a ticket in a lottery, though the evidence showed that she had contributed 50 percent of the purchase price of the ticket. The court held that inasmuch as the contract was a gambling contract, it would not be enforced but the parties would be left where the court found them. (See also *Crutchfield* v. *Rambo*, 38 Tex. Civ. App. 579; 86 S. W. 950; and *Roselle* v. *McAuliffe*, 141 Mo. 36; 39 S. W. 274.)

Nor does the case of *Moskowitz* v. *Cohen*, 286 N. Y. S. 152, cited by petitioner, furnish any real support for his contention. In that case a lottery ticket, upon which the names of both plaintiff and defendant had been placed, was drawn. The automobile, constituting the prize, was delivered to the defendant. Upon his refusal to

recognize that plaintiff had any title she brought an action in conversion. The court held that such a transfer could in law vest title in her. The cited case would be more nearly in point if in the case at bar the names of petitioner and his wife had both appeared upon the winning ticket; but that is not a fact disclosed by the evidence. The observations here made also apply to *Matta* v. *Katsoulas*, 192 Wisc. 212; 212 N. W. 261, cited by petitioner.

It is apparent that since petitioner purchased the winning ticket with his own money, placed only his name upon it and made no legal assignment of any part of it to his wife, she had no rights which could be asserted against the conductors of the lottery nor could she have required the payment of any portion of the prize money to her. It is equally apparent that under the laws of the state wherein she and her husband resided she could not have compelled the payment to her of half, or any part of the money which he collected; for the agreement was void. *Goodrich* v. *Houghton, supra.* Under the circumstances it is held that petitioner and his wife were not joint owners of the winning ticket and of the proceeds therefrom and petitioner's first contention is not sustained.

This brings us to petitioner's alternative contention which, epitomized, is, that inasmuch as he specifically complied with his agreement to share the winnings with his wife he should not be required to pay the tax upon the portion of the proceeds paid over to her. He relies chiefly upon *James P. McKenna*, 1 B. T. A 326, and *Mitchell M. Frey, Jr.*, 1 B. T. A. 338.

In *James P. McKenna, supra*, this Board held that the gross income of a racetrack bookmaker derived from his bookmaking operations should be determined by applying against the total receipts therefrom the sum of the amounts paid to bettors on his handbook, plus amounts returned to bettors by reason of scratches, called-off bets, and lay-off bets.

In *Mitchell M. Frey, Jr., supra*, it was held that a taxpayer was entitled to offset his gains from illegal gambling transactions against his losses from such transactions.

As the petitioner points out on brief, the respondent acquiesced in these decisions (IV–1 C. B. 2, 3) and embodied the holdings in I. T. 2175, IV–1, C. B. 141. In our opinion the cited cases are authority for petitioner's alternative contention. Petitioner's promise to pay his wife one-half of the proceeds of the two tickets purchased by him was made in consideration of a similar promise by her, and was just as much a part of the gambling venture as his investment in the ticket. His promise differs in no material respect from the promise of the bookmaker in the *McKenna* case to pay bettors in the event certain horses won. Both promises were illegal and unenforceable; but when executed the payments made reduce the amount of the

actual gain realized. Under the provisions of section 22 (a) of the Revenue Act of 1932 petitioner is required to include in his gross income "gain or profits, and income derived from any source whatever." His actual gain from the gambling venture was the amount he received from the operators of the Sweepstakes less the amount he agreed to pay and did pay to his wife.

The conclusion here reached is in accord with other Board decisions though no court decisions have been found in which the precise question was involved. Thus in *George L. Rickard*, 15 B. T. A. 316, a prize fight promoter made and distributed motion pictures of a prize fight in violation of the law. He had a partner in the illegal venture, to whom, pursuant to agreement, he paid one-half of the profits. The Board approved the respondent's determination "that such profits [i. e. the amount retained by Rickard] were taxable", the issue being whether or not the taxpayer could await the outcome of various civil and criminal proceedings and the payment of fines and lawyers' fees before reporting the profits so received.

In *A. L. Voyer*, 4 B. T. A. 1192, tickets in the lottery had been purchased by a group under a "pooling" arrangement, the agreement between the purchasers being that if any of the tickets won the other members of the group should share proportionately. The petitioner as the owner of four of the eleven tickets comprising the block, received four-elevenths of the prize money. It was held that the amount he received should have been included in his gross income, though the ticket stood in the name of another.

The rationale of the *Voyer* case seems to be sound and in accordance with such cases as *United States* v. *Sullivan*, 274 U. S. 259, holding that gains from an illegal enterprise must be reported as income. We are this day applying it in a case wherein the petitioner, like petitioner's wife in the case at bar, received one-half of the winnings of the sweepstakes ticket. See *Samuel L. Huntington*, 35 B. T. A. 835. In other words, though we do not have petitioner's wife before us for determination of her tax liability, we are deciding, under facts almost identical with those set out above with reference to her, that the recipient of a portion of the proceeds of a lottery must include the amount received in his gross income. But double taxation should be avoided unless required by express words. *United States* v. *Supplee-Biddle Hardware Co.*, 265 U. S. 189. Nothing in the general statute defining gross income (sec. 22, Revenue Act of 1932) seems to require that the sum received by petitioner's wife should be taxed as income twice, once to her and once to her husband, and we decline to so hold.

The respondent erred in determining the above deficiency.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*