HARRY J. RIEBE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 95152.   Promulgated April 24, 1940.

*George D. Finnie, C. P. A.*, for the petitioner.

*DeWitt M. Evans, Esq., Paul A. Sebastian, Esq.*, and *Stanley B. Pierson, Esq.*, for the respondent.

OPINION.

OPPER: Petitioner assails respondent's inclusion in his income of two-thirds of the proceeds of a lottery ticket purchased by petitioner. Petitioner contends that he made a gift to his wife and children of that portion of the ticket and that he is not chargeable with its receipt. The gift, however, is not asserted as of the time of original purchase, but is claimed to have taken place between the initial drawing and the running of the horse race upon which the ultimate result depended.

The problem presented is perhaps elusive by reason of the divergent principles necessarily to be applied. Although gambling transactions may be illegal and contracts and rights resulting therefrom unenforceable, income produced thereby is nevertheless taxable. *United States* v. *Sullivan*, 274 U. S. 259. It is petitioner's contention in effect that, since his contract with the sweepstakes operators was unenforceable, he should be charged only with that part of the income which he actually received; and, since the claimed arrangement whereby he was to permit members of his family to share in the proceeds was in fact executed, that he is entitled to treat as his income only that which actually came into his hands.

We think petitioner can not succeed. It is clear that when the ticket was purchased it became his property and that its avails would be taxable to him unless some intervening alteration of that ownership can be found to have taken place. It is petitioner's claim that evidence of such an event is furnished by his statement to his wife and children that he was giving them a share in the ticket. Granting that that transaction occurred exactly as described by the petitioner's witnesses, we think the evidence falls short of showing that such a change in ownership as would follow from a completed gift has thereby been established. There is no evidence of anything more than petitioner's oral statement. The official receipt referred to as the ticket was in petitioner's possession. He could have made physical delivery to the donees or at least to some one in their behalf and his own. It would have been possible for something in the nature of a symbolic or constructive delivery to have taken place as, for example, the execution of an instrument of gift. See *Henry* v. *Graves*, 16 Gratt. (57 VA) 244, cited by petitioner. Nothing of the sort, however, was even attempted, so far as the record shows. We can not say, therefore, that petitioner made as perfect a delivery "as the nature of the property and the circumstances and surroundings of the parties will reasonably permit." *Lunsford Richardson*, 39 B. T. A. 927. Since such delivery is an essential of a valid gift, we think petitioner has failed to show that his original ownership was

diluted prior to the time when the proceeds of the ticket were fully collectible. *Lunsford Richardson, supra.*

Petitioner contends that since the subject matter, a gambling contract, was incapable of lawful transfer, it is of no consequence that the gift was legally incomplete. We are of a contrary opinion. There is no reason to assume that for tax purposes the requirement of a completed transfer of some kind is to be dispensed with and the original owner is to be permitted to escape the tax consequences of his own transactions merely because there is some unenforceable element aside from the inconclusiveness of the transfer itself. If anything, we may regard the requirement as more forceful because by a completed physical transfer petitioner could have eliminated at once the doubly ineffectual character of the present contract as to both its lack of consideration and its illegal subject matter. To hold with petitioner that the legal requisites of a gift may be dispensed with here would place the owners of unlawful contracts in a favored position over those dealing with legitimate property. We see no necessity for such a result. Petitioner must be treated as the sole owner of the ticket and its proceeds, and not as jointly interested therein with his wife and children. See *Christian H. Droge*, 35 B. T. A. 829, 833.

It is contended that petitioner's failure to receive the proceeds of the ticket, beyond the one-third share which he retained, makes application of the doctrine of constructive receipt impossible and leads to the conclusion that he is taxable only on what he actually obtained. The evidence shows that, in spite of petitioner's notification to them, the sweepstakes authorities had a check for the full amount, payable to him, ready for delivery. It was his suggestion and not theirs that resulted in the delivery of a check to his order for the smaller amount. While it may be true, although no evidence of the Canadian law has been introduced, that petitioner could not have compelled the payment of the entire amount or of any part of it to himself if the debtor had resisted, yet that is not what happened and we think upon these facts petitioner voluntarily "turned his back" upon the proffered payment of the full amount of the winnings. See *Cecil Q. Adams*, 20 B. T. A. 243, 246; affd., 54 Fed. (2d) 228 (C. C. A., 1st Cir.); *Saenger, Inc.* v. *Commissioner*, 84 Fed. (2d) 23 (C. C. A., 5th Cir.). Unless the doctrine of constructive receipt is inapplicable to illegal transactions, and we see no reason why it should be, it is equally conclusive here.

The cases of *Christian H. Droge, supra,* and *Samuel L. Huntington,* 35 B. T. A. 835, are distinguishable from the present facts. In the *Droge* case the reasoning employed by the Board in permitting petitioner to deduct that portion of the winnings which he paid to his

wife was that petitioner's arrangement with his wife was itself a gambling transaction. It was the result of the pooling of their respective tickets. The Board held that petitioner was entitled to set off against his gambling gains the loss sustained in the gambling transaction with his wife. See *Mitchell M. Frey, Jr., et al., Executors,* 1 B. T. A. 338. There is, of course, no basis for any such determination here, since there was no arrangement of any kind with petitioner's family which could be treated as the cause of an offsetting gambling loss.

In the *Huntington* case the petitioner husband had placed the ticket in his wife's name, put it in her possession, and caused the authorities to deal with the ticket in such a way that when the winnings were distributed it was to his wife and not to petitioner that they were payable. Petitioner's right to receive any portion of the winnings was the result of a contract by which his wife had agreed to make such a payment to him. It is apparent that he was not the owner of the ticket nor chargeable with any part of the winnings to which he was not entitled by reason of the contract with his wife. And the Board pointed out that the situation of the wife was not before it.

It is suggested that certain language of the Board with reference to double taxation is favorable to petitioner. We think it clear that in its context that statement has no application to the present case. Here, as we have seen, there was no effective transfer to the wife and children until the proceeds had actually been collected and, passing through the hands of petitioner, had reached his wife and children as gifts of money represented by the bank drafts. The income upon which petitioner is taxable had already been received by him, at least constructively. The receipts by the wife and children were by way of gift and not as a taxable result of the gambling venture. It follows that these proceeds were not taxable income to any one but petitioner and hence that no taxation of him will result in the double taxation to which reference was made in the cases cited. And at least as to the wife, though it may be immaterial to this discussion, the enactment of section 820, subdivision (b) (1), Revenue Act of 1938, may well place her in a position to correct the results of her mistaken self-assessment.

*Decision will be entered for the respondent.*