HAVERTY REALTY & INVESTMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 112002. Promulgated January 31, 1944.

*E. D. Smith, Jr., Esq.*, for the petitioner.
*Bernard D. Hathcock, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: Are the net proceeds of the two life insurance policies transferred to the petitioner to be excluded from petitioner's gross income? In the deficiency notice reliance is placed upon section 22 (a) and 22 (b) (2) of the Internal Revenue Code. Upon brief, the respondent bases his position only upon section 22 (b) (1), (2). These subdivisions of section 22 are set forth in the margin.[1]

The parties do not disagree on the primary facts in the case. It is agreed that the two policies were transferred to the petitioner by the Furniture Co. and that subsequent thereto the petitioner realized certain sums upon the death of the insured as to one policy, and upon dis-

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter

(1) LIFE INSURANCE.—Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income) ;

(2) ANNUITIES. ETC.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. * * * In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment. or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph.

* * * * * * *

position of the other. The record does not show separately the treatment given each policy in the computation of the deficiency; but it is clear that as to the policy upon the life of John Rhodes Haverty the $25,087.50 received by the petitioner was an "amount received under a life insurance contract paid by reason of the death of the insured" within the language of section 22 (b) (1) and to be excluded from gross income unless, within the language of the latter part of section 22 (b) (2), the policy had been transferred to the petitioner for valuable consideration. With reference to the policy upon the life of Clarence Haverty, and the amount of $32,069 received by the petitioner upon assignment of the policy to Elizabeth Rawson Haverty, it is apparent that the question is not one of life insurance, but of amount of gain, if any, derived from the acquisition and disposition of the policy, which of course entails the question whether it was received by gift, in which case the petitioner would have the benefit of the donor's basis; or whether, on the other hand, it was acquired for consideration, in which case only such consideration paid, plus later premiums paid by the petitioner, could be used by the petitioner as basis against the $32,069 received for the policy when assigned. Apparently the parties are in agreement in this respect, for the only question presented is whether the insurance contracts were assigned to petitioner for valuable consideration. The respondent contends that there was such valuable consideration for the transfer. The evidence shows that the corporate records recite a promise to pay consideration and the assignments themselves recite the receipt of payment.

The petitioner contends, however, that there was, in fact, no consideration for the transfer of these policies; that it was never intended by the parties that the consideration stated in the written instruments should be paid; and that the stated consideration never was paid, or promised. Oral testimony adduced establishes the truth of the petitioner's contention. The transfer was made between two corporations owned by the same interests for the purpose of eliminating the policies from the assets of the transferor corporation, which was about to be merged with several other corporations into a holding company which was to be publicly financed in part. The underwriters objected to these policies being transferred to the holding company as part of the assets of the transferor corporation. The transaction which resulted in the acquisition of these policies by the petitioner was never entered on its books in any form.

The question, therefore, of the treatment of the net proceeds of these policies in the petitioner's gross income under section 22 (a), (b) (1), (2) of the Internal Revenue Code turns upon the admissibility of this parol testimony. The question of its admissibility was taken under advisement at the time of the trial.

Upon review of the authorities, it is clear that such testimony was properly received in the instant case for the following reasons: (1) The Commissioner was not a party to the original transactions; and (2) the question involved was one of consideration.

The Supreme Court of the United States, almost all of the Circuit Courts of Appeals, and this Court have held that the parol evidence rule can not be invoked by a third party, not a party to the written instrument involved.[2] In the instant case, the United States is a stranger to the contract. It asserts a tax liability, not a claim derived from either party to the contract.

The respondent cites no court case in which, contrary to the authorities set forth in the margin, it has been held that parol evidence is inadmissible as against a third person not a party to the written instrument. The case of *Brush-Moore Newspapers, Inc.* v. *Commissioner* (C. C. A., 6th Cir.), 95 Fed. (2d) 900, does not involve the exclusion of parol evidence. The evidence excluded in the case of *Interstate Realty Co.*, 25 B. T. A. 728, 733, 734, cited by the respondent, was properly excludible under the best evidence rule. The comment by the Board on the parol evidence rule in that case was unnecessary. Cf. *Charles F. Mitchell*, 45 B. T. A. 300, 303; *Dome Co.*, 26 B. T. A. 967, 969.

Turning now to the question of consideration: "* * * the recitals of a written instrument as to the consideration received are not conclusive, and it is always competent to inquire into the consideration and show by parol or other extrinsic evidence what the real consideration was." *Deutser* v. *Marlboro Shirt Co.* (C. C. A., 4th Cir.), 81 Fed. (2d) 139, 142, citing many authorities. The case of *Strickland* v. *Farmers' Supply Co.*, 14 Ga. App. 661; 82 S. E. 161, is to the same effect.

The authorities cited by the respondent themselves admit that parol evidence is admissible on the question of consideration where its effect will be to prove that the agreement was without consideration. The

[2] *Miller* v. *Robertson*, 266 U. S. 243, 255; *Valdes* v. *Central Altagracia*, 225 U. S. 58, 75; *Barreda* v. *Silsbee*, 62 U. S. 146. 169; *Spund* v. *Cafritz Const. Co.* (App. D. C.), 48 Fed. (2d) 1014; *Sigua Iron Co.* v. *Greene* (C. C. A., 2d Cir.), 88 Fed. 207, 217; *Tex-Penn Oil Co.* v. *Commissioner* (C. C. A., 3d Cir.), 83 Fed. (2d) 518, 522; affd., 300 U. S. 481; *Mitchell* v. *McShane Lumber Co.* (C. C. A., 5th Cir.), 220 Fed. 878, 879; *Borin Corporation* v. *Commissioner* (C. C. A., 6th Cir.), 117 Fed. (2d) 917; *Commissioner* v. *H. F. Neighbors Realty Co.* (C. C. A., 6th Cir.), 81 Fed. (2d) 173; *Indianapolis Glove Co.* v. *United States* (C. C. A., 7th Cir.), 96 Fed. (2d) 816, 819; *Arthur R. Jones Syndicate* v. *Commissioner* (C. C. A., 7th Cir.), 23 Fed. (2d) 833, 834; *O'Shea* v. *New York C. & St. L. R. Co.* (C. C. A., 7th Cir.), 105 Fed. 559, 563; *Central Coal & Coke Co.* v. *George S. Good & Co.* (C. C. A. 8th Cir.), 120 Fed. 793, 799; *Commissioner* v. *Berkeley Hall School, Inc.* (C. C. A., 9th Cir.), 84 Fed. (2d) 539; *Levering* v. *Indemnity Ins. Co. of North America* (C. C. A., 9th Cir.), 50 Fed. (2d) 151, 153; *Kunihiro* v. *Lyons Bros. Co.* (C. C. A., 9th Cir.), 12 Fed. (2d) 894, 895; *American Crystal Sugar Co.* v. *Nicholas* (C. C. A., 10th Cir.), 124 Fed. (2d) 477; *Park Chamberlain*, 41 B. T. A. 10, 15; *Combs Lumber Co.*, 41 B. T. A. 339; *Elliott Paint & Varnish Co.*, 44 B. T. A. 241; *Charles F. Mitchell*, 45 B. T. A. 300, 303. See *Bertelsen & Petersen Engineering Co.* v. *United States* (C. C. A., 1st Cir.), 60 Fed. (2d) 745, 747. Cf. *Pugh* v. *Commissioner* (C. C. A., 5th Cir.), 49 Fed. (2d) 76.

evidence adduced by the petitioner meets this test precisely, since it proves that there was no consideration for the transfers here involved.

The respondent further argues on brief that, assuming the failure of the stated cash consideration, there exists other valuable consideration to support the transfer of these policies to the petitioner. The respondent states that "* * * there remained the promise to pay on the part of petitioner"; that "Second, the record clearly shows that petitioner assumed the obligations of the insurance policies"; and that "Third, a consideration flowed to petitioner's stockholders as a result of the transfer of the insurance policies."

The directors and stockholders of both companies being the same, the resolutions of both companies were passed in the presence of, and by the vote of, the same individuals. Any knowledge, therefore, of lack of intention to pay the stated consideration on the part of the transferee was necessarily known by and acquiesced in by the transferor because of this identity of directors and stockholders. It follows that the parol evidence establishes as a fact that there never was any promise by the transferee to pay the stated consideration.

The petitioner, moreover, did not make an express promise to pay future premiums. It merely agreed "to pay this sum * * * for transferring these policies * * * together with all the benefits and obligations resulting thereof." The law does not impose any obligation on the part of the owner of an ordinary life policy to pay future premiums. The general rule in this respect is well stated in Vance, Law of Insurance (2d Ed., 1930), at pages 260 and 261, as follows:

> * * * In so far as it is executory, the ordinary life policy is purely unilateral. *The insured is not positively bound to do anything whatsoever; he nowhere promises to pay any premium that may fall due;* he merely agrees that, if he fails to pay, his rights under the policy shall be forfeited or otherwise affected. Even though the policy may state that the premium is payable annually, no promise to pay will be implied, such an implication being inconsistent with the penalizing spirit of the whole contract. * * * [Italics supplied.]

Taxation is a practical matter, as has variously been stated. If we take a practical view of this transaction, it is a reasonble conclusion from the evidence that the transfer of the two policies effected no significant change in their beneficial ownership. The transfer was made solely as a matter of business expediency. In view of the substantial identity of the stockholders of the two corporations, it is clear that the parties did not intend to impose upon the transferee any greater obligations than those possessed by the transferor at the time of the transfer. Therefore, in the absence of any express promise on the part of the transferee to pay future premiums, no such promise should be implied. The parol evidence establishes that there was in fact no promise to pay the consideration recited.

So far as concerns the idea that consideration flowed to the petitioner's stockholders: This is immaterial. The statute has to do with consideration "given for such transfer and the amount of the premiums and other sums subsequently paid by the transferee." Regulations 111, sec. 29.22 (b) (2)–3. Though that regulation is not applicable to the taxable year 1940, here involved, we think it states a principle properly to be considered here. Moreover, the identity of stockholders in the two corporations precludes, as above seen, the idea of a change in beneficial ownership of the policies.

The respondent cites in his brief the following cases on this point: *Stroud & Co.*, 45 B. T. A. 862; *King Plow Co. v. Commissioner* (C. C. A., 5th Cir.), 110 Fed. (2d) 649; and *Charles E. Lambeth*, 38 B. T. A. 351. All of them are distinguishable from the instant case, because, in all of them. the contract was supported by actual consideration. either monetary or in property moving from the transferee.

We, therefore, hold that neither of the policies in the instant case was transferred to petitioner by assignment or otherwise for a valuable consideration, within the meaning of section 22 (b) (1), (2). of the Internal Revenue Code. The proceeds received by the petitioner trom the policy upon the life of John Rhodes Haverty was therefore properly excluded from its gross income, as provided for by section 22 (b) (1) of the Internal Revenue Code, and petitioner took its donor's basis for the policy upon the life of Clarence Haverty (section 113 (a) (2) of the Internal Revenue Code). Since it is not contended that such basis, plus premiums paid by the petitioner, do not exceed the amount received upon assignment of the policy, we hold that petitioner realized no gain from the assignment. These conclusions make it unnecessary to consider the second issue.

*Decision of no deficiency will be entered for the petitioner.*