Clarence Clark Hamlin Trust; The Exchange National Bank of Colorado Springs, and Tor Hylbom, Trustees, Petitioners, v. Commissioner of Internal Revenue, Respondent.

Estate of T. E. Nowels, Deceased; Bertie M. Nowels and The Exchange National Bank of Colorado Springs, Coexecutors, and Bertie M. Nowels, Surviving Wife, Petitioners, v. Commissioner of Internal Revenue, Respondent.

Docket Nos. 28135, 28605.    Promulgated January 22, 1953.

*Ralph B. Mayo*, *C. P. A.*, and *John L. J. Hart*, *Esq.*, for the petitioners.

*Frank M. Cavanaugh*, *Esq.*, for the respondent.

## OPINION.

Tietjens, *Judge:* This case confronts us with the not unusual situation in which respondent, to protect the revenue, takes inconsistent positions with respect to the tax consequences of the same transaction. See *Estate of Daniel G. Reid*, 15 T. C. 573; *Ruth W. Collins*, 14 T. C. 301. Here, respondent would tax the selling stockholders on the portion of the purchase price allocated to the covenant not to compete as ordinary income to them. In *Gazette Telegraph Co.*, Docket No. 24861, 19 T. C. 692, on the other hand, respondent contended that the purchasing stockholders paid the entire purchase price for the stock and nothing for the covenant not to compete and so are not entitled to amortize the amount claimed to have been paid for the covenant.

Inevitably this adds to the difficulty of reaching a decision, for almost irreconcilable interpretations of the evidence are strongly urged by the parties to the transaction, in the understandable efforts of each party to gain a tax advantage, while respondent presents contrary arguments in each case, though in the nature of things he should lose one and win the other.

Petitioners here primarily contend that the money they received from the Hoileses was all received for their stock in Gazette-Telegraph and that none was received for their covenant not to engage in the newspaper publishing or distribution business. This, of course, would make meaningless the clause of the contract specifically allocating the agreed upon $200 as follows: $150 for each share of stock and $50 on a per share basis to each stockholder for the covenant.

Undoubtedly, this Court, in a proper case, is not bound by the parol evidence rule in seeking to determine the tax consequences of a transaction to which the Government is not a party. *Haverty Realty & Investment Co.*, 3 T. C. 161. This does not help petitioners, for after taking into account all of the relevant facts of the transaction and considering the whole record, we have concluded that the written contract accurately reflected the agreement of the parties and that that agreement was reached at arm's length. In the circumstances, it is not incumbent on the Court to disturb the allocation of purchase price made by the parties themselves.

This Court has said in *Rodney B. Horton*, 13 T. C. 143, 147–148:

It is well settled that if, in an agreement of the kind which we have here, the covenant not to compete can be segregated in order to be assured that a separate item has actually been dealt with, then so much as is paid for the covenant not to compete is ordinary income and not income from the sale of a capital asset. *Estate of Mildred K. Hyde*, 42 B. T. A. 738. On the other hand, where the covenant not to compete accompanies the transfer of good will in the sale of a going concern and it is apparent that the covenant not to compete has the function primarily of assuring to the purchaser the beneficial enjoyment of the good will which has been acquired, the covenant is regarded as nonseverable and as being in effect a contributing element of the assets transferred. *Toledo Newspaper Co.*, 2. T. C. 794; *Toledo Blade Co.*, 11 T. C. 1079; *Aaron Michaels, supra.* [12 T. C. 17]

As stated in *Gazette Telegraph Co., supra*, we think this case is distinguishable from *Toledo Newspaper Co.* and *Toledo Blade Co.* [referred to in the excerpt above from the *Horton* case]. Here, petitioners were selling their stock in Gazette-Telegraph. They were not selling a going business together with the good will, in which event the covenant not to compete might have been regarded as non-severable. The parties to the instant transaction, in our opinion, treated the covenant as a separate item of their negotiations and while it is evident

that petitioners might not have fully appreciated the significance tax-wise of what they were doing, the purchasers were fully aware of what the consequences to them might be, and had put the petitioners on notice that tax problems were involved.

Much of petitioners' evidence bore on the value of the covenant, which value, as they saw it, was zero, because none of them, according to their contention, intended to engage further in the newspaper business anyway and there was doubt about the legal capacity of the Hamlin Trust and El Pomar Investment Company so to do. This, it seems to us, begs the question, which is not whether the covenant had a certain value, but, rather, whether the purchasers paid the amount claimed for the covenant as a separate item in the deal and so treated it in their negotiations. This, we have found, they did.

We see nothing in the record before us which would require a result inconsistent with our decision in *Gazette Telegraph Co., supra.* Accordingly,

*Decision will be entered for the respondent.*

Reviewed by the Court.

———

JOHNSON, *J.*, dissenting: As the trier of the facts who heard the testimony in this case I cannot agree with the conclusion reached in the majority opinion that in the transaction here the sellers were paid $50 per share for their covenant not to compete and that same constituted a separate item of the transaction. True, the recital in the contract so states, but the evidence and record as a whole proves the falsity of this statement. On the contrary it clearly appears from the evidence that the owners sold the stock coupled with an agreement not to compete for a lump sum of $200 per share.

The buyers and sellers had so agreed and a written contract to that effect was prepared and signed by all of the sellers and tendered to the buyers for their signatures, whereupon Hoiles, acting for the buyers, said "the contract was satisfactory", but asked whether the sellers "to help the buyers tax-wise" would have any objection to an additional clause evaluating the agreement not to compete at $50 a share and the stock at $150 a share. The sellers, unaware of its tax consequences or monetary detriment to them, with practically no discussion or consideration, agreed to its inclusion and Hoiles, well versed in income tax liability based upon his experience in the purchase of many newspapers, wrote the additional paragraph to the contract which constitutes the basis of respondent's contention and upon which the majority opinion is based.

That the recitals in this added paragraph do not accurately or correctly reflect the facts or the consideration of the transaction but are window-dressing inserted for income tax purposes only is apparent from the record. In support of this conclusion we cite:

(1) The circumstances under which it was inserted, the reasons therefor and lack of consideration given thereto all tend to discredit its probative value and stamp its provisions as being other than bona fide and realistic.

(2) It is the only evidence in the record that a separate value was placed upon the stock and the agreement not to compete. In the negotiations covering several months, discussion as to the price to be paid was always on overall figure.

(3) It is in conflict with all other evidence in the record that the value of the stock was $150 per share, and the record as a whole impeaches this valuation as being a sum far below either its real, market, or profit-earning value.

(4) Except for Hoiles' unsupported testimony at the hearing to that effect, it is the only evidence that the agreement not to compete was of the value of $50 a share. Measured by the evidence as a whole, this value magnifies out of all proportion the value, if any, possessed by the noncompetitive agreement of the sellers. Nowels was the only one of the sellers whose training and experience might cause him to compete, and before consummation of the sale, Hoiles had employed him by written contract to work for the buyers.

Recitals of a written instrument as to the consideration are not conclusive and it is always competent to show by parol or other extrinsic evidence what the real consideration was. *Haverty Realty & Investment Co.*, 3 T. C. 161. Tax consequences from the sale of property depend upon the substance and actuality of the transaction rather than the form or recited consideration in the contract. *Commissioner* v. *Court Holding Co.*, 324 U. S. 331. As was said by the Supreme Court in this case:

\* \* \* To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress.

Believing that petitioners have sustained their contention that no part of the consideration was separately paid for the covenant not to compete and accordingly none of same was ordinary income, I therefore respectfully dissent.

TURNER and WITHEY, *JJ.*, agree with this dissent.