Henry Braunstein and Mae Braunstein v. Commissioner. Murray Kahn and Sylvia Kahn v. Commissioner.
Braunstein v. Commissioner
Docket Nos. 88049, 88050.
United States Tax Court
T.C. Memo 1962-210; 1962 Tax Ct. Memo LEXIS 99; 21 T.C.M. (CCH) 1132; T.C.M. (RIA) 62210; August 31, 1962
*99 Petitioners held a ticket in the Irish Sweepstakes. Two days prior to the running of the race, they received a notice of assignment of a horse. This assignment also notified petitioners that if their horse lost, they would nevertheless receive a certain small prize. The next day they set up trusts of portions of "any proceeds which may be obtained from said ticket." The assigned horse thereafter won the race. Held: 1. A gift of the "proceeds" of an Irish Sweepstakes ticket prior to the race is tantamount to a gift of the ticket as such. 2. Donors of interests in the "proceeds" of a sweepstakes ticket are taxable on the guaranteed value of the ticket at the time of transfer (to the extent it is in excess of their basis) but not upon the remaining proceeds eventually realized upon such ticket. Samuel S. Saiber, Esq. *100 , 11 Commerce St., Newark, N.J., for the petitioners. William F. Fallon, Esq., for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent determined the following deficiencies in income tax for the taxable year ended December 31, 1957: Docket No.
Petitioner
Deficiency
88049
Henry and Mae Braun-
stein
$16,903
88050
Murray and Sylvia Kahn
$16,992 The issue for our determination is whether petitioners made a valid gift of a part interest in an Irish Sweepstakes ticket and are therefore not taxable on the proceeds from the transferred part. Findings of Fact Some of the facts have been stipulated and are so found. Petitioners Henry Braunstein and Mae Braunstein are husband and wife residing in Union, New Jersey, and filed their joint Federal income tax returns for the year 1957 with the district director of internal revenue at Newark, New Jersey. They have two children, Florence Ruth and Gary Joel, who were 10 and 7 years old, respectively, as of December 31, 1957. Petitioners Murray Kahn and Sylvia Kahn are husband and wife residing in Union, New Jersey, and filed their joint Federal income tax *101 return for the year 1957 with the district director of internal revenue at Newark, New Jersey. They have two children, Dennis I. and Mitchell Kahn, who were 7 and 10 years old, respectively, as of December 31, 1957. In the latter part of March 1957, petitioners Henry and Murray (hereinafter referred to as petitioners) purchased in their own names a certain ticket numbered NHJ 21506 in what is commonly known as the "Irish Hospitals' Sweepstake Lottery." Each man contributed $1.50 for his respective one-half interest in said ticket. On June 3, 1957, petitioners were notified that their ticket had been assigned a horse (named "Crepello") in the race to be run. The notification of assignment assured petitioners a consolation price of $2,147 and a prize of $140,000, $56,000, or $28,000, respectively, if Crepello placed first, second, or third in the race. The horse, Crepello, was one of the favorites in the race. On June 3, 1957, petitioners received an offer of $10,000 in cash for a one-half interest in their ticket, but this offer was rejected. On that evening Henry and a friend, Jerry Armus, were driving to New York. Armus, a certified public accountant, suggested that Henry *102 set up a trust fund for his children's future education and welfare. Later that evening Murray was contacted and approved of the idea. Petitioners, Armus, and Armus' accountant-partner, Margulies, met the following day in Armus' office. They decided to procure legal services in setting up the trusts, and since the race was to be run the following day, selected an attorney, Weckstein, in the same building as Armus and Margulies. Petitioners understood that there would be a tax benefit available if they irrevocably assigned an interest in the ticket to their respective children. Petitioners wished to set aside $10,000 for each child. They expressed their desires to Weckstein, whose practice was about 90 percent Interstate Commerce Commission work. He immediately prepared a trust indenture which was examined only superficially by petitioners before they signed it. Armus also took only a "quick look" at the instrument. This trust agreement dated June 4, 1957, read in part as follows: Whereas we, Henry Branunstein and Murray Kahn, both being of the Township of Union in the County of Union and State of New Jersey, are the holders of a certain certificate evidencing an interest in *103 the what is commonly known as the Irish Sweepstakes, No. NHJ 21506, and, Whereas it is the intention of the parties hereto to irrevocably set over and assign a portion of the proceeds, if any, which may inure to us as a result of the joint purchase by us of said certificate, Now Therefore, We, HENRY BRAUNSTEIN and MURRAY KAHN, hereinafter called the "donors" have transferred and delivered and by these presents do irrevocably transfer and deliver unto Mrs. Ethel Lewis and to Mrs. Gertrude Bloom each twenty (20%) percent of any proceeds which may be obtained from said ticket. * * *
SECOND: a. Mrs. Ethel Lewis shall set up a separate account of ten (10%) percent of the proceeds for Dennis I. Kahn and ten (10%) percent for Mitchell Kahn. b. Mrs. Gertrude Bloom shall set up a separate account of ten (10%) percent of the proceeds for Florence Ruth Braunstein and ten (10%) percent for Gary Joel Braunstein. * * *
We, the trustees above named in the foregoing irrevocable living trust, do hereby acknowledge the receipt from Henry Braunstein and Murray Kahn of a forty (40%) percent potential interest in the instrument above described, the trust fund therein referred to, *104 and do hereby accept the foregoing trust and agree to execute the same according to its terms and conditions. Ethel Lewis named in the above instrument is the mother of petitioner Sylvia Kahn and the grandmother of Dennis I. and Mitchell Kahn. Gertrude Bloom named in that document is the mother of petitioner Mae Braunstein and the grandmother of Florence Ruth and Gary Joel Braunstein. On June 5, 1957, the horse Crepello won the race and thereupon petitioners' ticket became entitled to a prize of $138,875. [1] Pursuant to instructions the proceeds were collected through the Investors Savings and Loan Association of Millburn, New Jersey. Throughout the collection procedure, petitioners made no mention of the interests in the proceeds purportedly transferred under the trust agreement. Upon collection of the proceeds accounts were opened in the names of the trustees for the benefit of the four children of petitioners in the Investors Savings and Loan Association, Union Branch. Each account contained $13,887.50 or 10 percent of the net prize received. The trusts *105 filed fiduciary returns for 1957 and for each year thereafter. The only withdrawals other than for taxes and swimming club dues were loans to Mae Braunstein's brother-in-law, which were secured and repaid. Respondent determined that the entire proceeds of the ticket, less its cost, constituted taxable income to the petitioners. Opinion Respondent seeks to exclude under the parol evidence rule all testimony concerning petitioners' wishes and intent as expressed to Weckstein and testimony as to what they thought the instrument accomplished. However, the parol evidence rule cannot be invoked by one not a party to the written instrument involved. Haverty Realty & Investment Co., 3 T.C. 161, 167 (1944); Estate of Leon Holtz, 38 T.C. (April 10, 1962); Borin Corporation v. Commissioner, 117 F. 2d 917 (C.A. 6, 1941). Since respondent is not a party to, nor asserting any right under the trust instrument itself, parol evidence is admissible as an aid to the interpretation of that instrument. It is clear and undisputed that the prize money is taxable to the owners of the ticket, and if petitioners made a valid gift of interests in the ticket the donees are taxable *106 on the price therefrom. Christian H. Droge, 35 B.T.A. 829 (1937); Samuel L. Huntington, 35 B.T.A. 835 (1937); Max Silver, 42 B.T.A. 461, acq. 1940-2 C.B. 7. See Rev. Rul. 55-638, 1955-2 C.B. 35, which states: The proceeds from a sweepstakes ticket acquired by gift before it became a winning ticket are includible in the gross income of the donee to the extent in excess of the value of the gift. The established selling price paid for the ticket by the donor constitutes the value of the gift which is excludable from gross income under section 102 of the Internal Revenue Code of 1954. See Max Silver v. Commissioner, 42 B.T.A. 461, acquiescence, C.B. 1940-2, 7. With one exception all of the numerous sweepstakes cases involve valid gifts made prior to the assignment of a horse to the ticket. The exception is Harry J. Riebe, 41 B.T.A. 935 (1940), affd. per curiam 124 F. 2d 399 (C.A. 6, 1941), relied on by respondent. Respondent's reliance is misplaced, for that case held merely that there had not been a completed gift. We said: (p 937) * * * we think the *107 evidence falls short of showing that such a change in ownership as would follow from a completed gift has thereby been established. There is no evidence of anything more than petitioner's oral statement. The official receipt referred to as the ticket was in petitioner's possession. He could have made physical delivery to the donees or at least to some one in their behalf and his own. It would have been possible for something in the nature of a symbolic or constructive delivery to have taken place as, for example, the execution of an instrument of gift. * * * [Italics supplied.] We must therefore decide whether the trust instrument of June 4, 1957, transferred an ownership interest in ticket No. NHJ 21506. The dispute revolves around the word "proceeds." Petitioners, Armus, and Weckstein all testified that the intent was to transfer irrevocably an interest in the ticket. Weckstein, when asked on cross-examination why he selected the word "proceeds," testified that he "assumed the proceeds and the asset in this instance to be the same." Petitioners contend that everyone intended to convey interests in the ticket; that the drafting of the instrument was done in a couple hours *108 by one not overly familiar with anything but Interstate Commerce Commission work; and that transferring the "proceeds" of the ticket is the same as transferring the ticket itself. In Christian H. Droge, supra, the taxpayer and his wife each bought two tickets in the Irish Hospitals' Sweepstakes, and they had an oral understanding that if either ticket won, they would share the money evenly. The Board held that only half of the prize was taxable to the taxpayer. Similarly, in Samuel L. Huntington, supra, we found that petitioner took the ticket in his wife's name and "made an agreement with her that the proceeds received, if any, would be divided equally." Half of the prize was taxed to him. In A. L. Voyer, 4 B.T.A. 1192 (1926), taxpayer purchased 4 lottery tickets in a pool of 11, agreeing with the purchasers of the other 7 tickets that if any ticket in the pool won, the prize would be divided among the others in the pool in proportion to the number of tickets held. It was not disputed that taxpayer was taxable on four-elevenths of the proceeds although another ticket in the pool was the winning one. An Irish Sweepstakes ticket has but *109 one value - the chance that the horse assigned to it will place in the race. An assignment of the proceeds of a ticket of this nature is an assignment of the right it represents - the right to collect if the horse wins. In the cases discussed above no distinction between assigning the ticket as opposed to agreeing to share the prize has been drawn, and we decline to draw one here. Although the wording of the instrument is poor, we conclude that 10 percent interests in the "ticket" were transferred in trust for each child. However, unlike the Droge, Huntington, and Silver cases, supra, the gift in the instant case occurred between the time of notification of the assignment of a horse and the actual running of that race. During this period and at the time of the gift, the holder of petitioners' ticket was guaranteed a prize of not less than $2,147. Since petitioners were absolutely entitled to that amount (having only to wait 2 days and until the race had been run), the transfer of the right to receive it was an anticipatory assignment of a fixed right to income. Helvering v. Horst, 311 U.S. 112 (1940). Respondent suggests on brief that petitioners must be taxed upon *110 the fair market value at the time of transfer. [2] However, this is not an assignment of the "fruit" of the "tree" which earned the income, cf. Lucas v. Earl, 281 U.S. 111 (1930), but the transfer of an asset the ultimate value of which is wholly contingent. We doubt that respondent would seek to tax petitioners for having assigned $20,000 of "income" (if that was the fair market value) had Crepello lost the race and petitioners received only $2,147.
It is clear that on June 4 petitioners were entitled to the sum of $2,147 in all events. In addition, if Crepello were to place in the race on June 5, they would receive the additional prize. The gift of their right to receive the $2,147 cannot prevent their being taxed thereon to the extent such sum exceeds basis. The gift of the right to share additional prize money is different, and the taxability of such money is controlled by the Droge, Silver, and other cases cited above. Decisions will be entered under Rule 50. Footnotes
1. This is the net figure after collection expenses. The gross prize was [*] 50,000, or approximately $140,000.↩
2. Because of our holding on this issue we need not decide what this value was, but in view of the offer of $10,000 for a one-half interest, it may have been $20,000.↩